**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SETH JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 12-cv-2548 EFM/DJW |
| **v.** | ) | |
| | ) | |
| **KRAMER & FRANK, P.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, SETH JOHNSON, by and through his attorneys, SMITHMARCO, P.C., and for his complaint against the Defendant, KRAMER & FRANK, P.C., Plaintiff states as follows:

**I.    PRELIMINARY STATEMENT**

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq and the Electronic Funds Transfer Act (hereinafter "EFTA"), 15 U.S.C. §1693, et seq.

**II.    JURISDICTION & VENUE**

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Jurisdiction arises under the EFTA, 15 U.S.C. §1693m.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

**III.    PARTIES**

5.      SETH JOHNSON, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Derby, County of Sedgwick, State of Kansas.

1

6.     The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Midland Funding, LLC (hereinafter, "the Debt").

7.     The Debt was incurred relative to the personal use of Plaintiff and/or for Plaintiff's household expenditure.

8.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

10.     At all relevant times, Plaintiff had a checking account in his name at Meritrust Credit Union (hereinafter, "Meritrust checking account").

11.     At all relevant times, Plaintiff's Meritrust checking account was established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

12.     At all relevant times, Meritrust Credit Union was a "financial institution" as that term is defined by 15 U.S.C. §1693a(8).

13.     At all relevant times, Meritrust checking account was an "account" as that term is defined by 15 U.S.C. §1693a(2).

14.     KRAMER & FRANK, P.C., (hereinafter, "Defendant") is a law firm engaged in the collection of debt within the State of Kansas.  Defendant is incorporated as a Professional Corporation in the State of Missouri.

15.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

16.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

17.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

18.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

19.     At all relevant times, the fund transfers from Plaintiff's Meritrust checking account to Defendant, as alleged in this complaint, were "electronic fund transfers" as defined by 15 U.S.C. §1693a(7) as the funds at issue were transferred to Defendant via an electronic, terminal, telephonic instruction or computer or magnetic tape after Defendant instructed Meritrust Credit Union to transfer funds to Defendant from Plaintiff's Meritrust checking account

20.     At all relevant times, Defendant was a payee that was the recipient of funds transferred from Plaintiff's Meritrust checking account to Defendant.

21.     At all relevant times, the fund transfers from Plaintiff's Meritrust checking account to Defendant, as alleged in this complaint, were electronic fund transfers authorized in advance by Plaintiff to recur at substantially regular intervals and were "preauthorized electronic fund transfer" as used in this Complaint is defined by 15 U.S.C. §1693a(15).

22.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.   ALLEGATIONS

## FACTS COMMON TO ALL COUNTS

23.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

24.     On or about August 12, 2011, Defendant sent Plaintiff a correspondence in an attempt to collect the Debt. (See a true and exact copy of said correspondence, dated August 12, 2011, attached hereto as **Exhibit A**).

25.     In the correspondence, dated August 12, 2011, Defendant stated Plaintiff owed a balance due of $2,750.52 relative to the Debt.

26.     On or about September 9, 2012, a lawsuit was filed against Plaintiff in the District Court of Sedgwick County, State of Kansas, captioned as *Midland Funding, LLC v. Seth Johnson*, with case number 2011 LM 015799-CS (hereinafter, "Sedgwick County Lawsuit").

27.     Defendant represents Midland Funding LLC in the Sedgwick County Lawsuit.

28.     The Sedgwick County Lawsuit was filed against Plaintiff relative to the Debt in the amount of $2,711.88.

29.     In or around October 2011, prior to October 17, 2011, Plaintiff engaged in a telephone conversation with Defendant wherein the parties entered into a payment agreement relative to the Debt.

30.     Plaintiff and Defendant agreed that Plaintiff would make payments to Defendant, in the amount of $100.00 relative to the Debt.

31.     Plaintiff and Defendant agreed that Plaintiff would make the payments to Defendant every other Thursday.

4

32.    Plaintiff and Defendant agreed that Plaintiff would make the payments to Defendant until the Debt was paid in full.

33.    Plaintiff and Defendant agreed that Plaintiff's first payment was to be made on or after Thursday October 13, 2011.

34.    During the course of the telephone call, Defendant informed Plaintiff that it could electronically debit the monthly payments agreed upon by the parties from Plaintiff's debit account.

35.    Plaintiff then provided Defendant with his Meritrust checking account information so that Defendant could automatically withdraw payments from Plaintiff's Meritrust checking account in accordance with the terms of the payment arrangement entered into between the parties.

36.    During the course of the aforesaid telephone call, Plaintiff provided Defendant with his Meritrust checking account information so that Defendant could electronically withdraw $100.00 payments from Plaintiff's Meritrust checking account in accordance with the terms of the payment arrangement entered into between the parties.

37.    During the course of the aforesaid telephone call, Plaintiff then confirmed with Defendant that Defendant would debit payments in the amount of $100.00 from his Meritrust checking account every other Thursday, starting on October 13, 2011, until the Debt was paid in full.

38.    During the course of the aforesaid telephone call, Plaintiff provided Defendant with his oral authorization for Defendant to electronically transfer funds from Plaintiff's Meritrust checking account to Defendant in accordance with the monthly payment terms agreed upon by the parties.

5

39.     During the course of the aforesaid telephone call, Plaintiff provided Defendant with his oral authorization for Defendant to electronically transfer funds from Plaintiff's Meritrust checking account to Defendant until the Debt was paid in full.

40.     At no time during the aforesaid telephone conversation did Defendant advise Plaintiff that in order for Defendant to be able to transfer funds from Plaintiff's Meritrust checking account to Defendant that Plaintiff had to provide Defendant with written consent to carry out the aforesaid transfer, as required by the Electronic Funds Transfer Act, 15 U.S.C. §1693(e)(a).

41.     Defendant's representations to Plaintiff during the aforesaid telephone call, had the effect of conveying to an unsophisticated consumer that the parties had entered into a payment agreement relative to the Debt.

42.     Defendant's representations to Plaintiff during the aforesaid telephone call, had the effect of conveying to an unsophisticated consumer that given the parties had entered into a payment agreement relative to the Debt that Defendant would not take additional collection actions against Plaintiff such as filing a lawsuit against him or commencing garnishment proceedings against him.

43.     Defendant's representations to Plaintiff during the aforesaid telephone call, caused Plaintiff to believe that because the parties had entered into a payment agreement relative to the Debt that Defendant would not take additional collection actions against Plaintiff such as filing a lawsuit against him or commencing garnishment proceedings against him.

44.     Due to Defendant's representations to Plaintiff during the aforesaid telephone call, Plaintiff believed that the parties had entered into payment agreement relative to the Debt.

6

45.     To date, Plaintiff has not provided Defendant with written consent to transfer any funds from Plaintiff's Meritrust checking account to Defendant.

46.     To date, Plaintiff has not provided Defendant with written authorization to transfer any funds from Plaintiff's Meritrust checking account to Defendant.

47.     To date, Defendant has not obtained written consent or authorization from Plaintiff or any third-parties to transfer funds from Plaintiff's Meritrust checking account to Defendant.

48.     To date, Plaintiff has not provided Defendant with written consent or authorization for Defendant to carry out any electronic fund transfers from Plaintiff's Meritrust checking account to Defendant.

49.     To date, Plaintiff has not provided Meritrust Credit Union with written consent or authorization to allow Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

50.     To date, Plaintiff has not provided Meritrust Credit Union with written consent or authorization for Defendant to carry out any electronic fund transfers from Plaintiff's Meritrust checking account to Defendant.

51.     To date, Plaintiff has not informed Defendant that he waived his right to provide Defendant with written consent or authorization to execute the transfer of funds from Plaintiff's Meritrust checking account to Defendant.

52.     On or about October 17, 2011, Defendant withdrew $100.00 from Plaintiff's Meritrust checking account.

53.     The October 17, 2011, payment was withdrawn pursuant to the terms of the payment agreement entered into between the parties.

54.     On or about October 17, 2011, Defendant transferred to Defendant $100.00 in funds from Plaintiff's Meritrust checking account.

55.     On or about October 17, 2011, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Meritrust checking account.

56.     On or about October 17, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

57.     On or about October 17, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Meritrust Credit Union had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

58.     At no time prior to October 17, 2011, did Defendant provide Plaintiff with a copy of the any written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

59.     On or about October 17, 2011, subsequent to Defendant having withdrawn $100.00 from Plaintiff's Meritrust checking account, upon information and belief, Plaintiff only owed a principal balance of $2,611.88 relative to the Debt.

60.     On or about November 7, 2011, Defendant withdrew $100.00 from Plaintiff's Meritrust checking account.

61.     The November 7, 2011, payment was withdrawn pursuant to the terms of the payment agreement entered into between the parties.

62.     On or about November 7, 2011, Defendant transferred to Defendant $100.00 in funds from Plaintiff's Meritrust checking account.

63.     On or about November 7, 2011, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Meritrust checking account.

64.     On or about November 7, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

65.     On or about November 7, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Meritrust Credit Union had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

66.     At no time prior to November 7, 2011, did Defendant provide Plaintiff with a copy of any written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

67.     On or about November 7, 2011, subsequent to Defendant having withdrawn $100.00 from Plaintiff's Meritrust checking account, upon information and belief, Plaintiff only owed a principal balance of $2,511.88 relative to the Debt.

68.     On or about November 15, 2011, Defendant obtained a "consent judgment" against Plaintiff in the Sedgwick County Lawsuit in the total amount of $2,792.12 plus costs. (See a true and exact copy of the Judgment, entered November 15, 2011, attached hereto as **Exhibit B**).

69.     The judgment of $2,792.12 plus costs consisted of a principal balance of $2,711.88 relative to the Debt. (**Exhibit B**).

70.     At the time the judgment was obtained against Plaintiff, Plaintiff only owed Defendant a principal balance in the amount of $2,511.88 relative to the Debt.

9

71.     At the time the judgment was obtained against Plaintiff, Plaintiff owed Defendant a total principal balance of less than $2,711.88.

72.     At the time the judgment was obtained against Plaintiff, the judgment stated "[e]xecution stayed upon payment of $100.00 twice per month beginning on October 16, 2011 and November 2, 2011 and continuing on the same days of each successive month thereafter until the judgment, costs, attorney fees and accrued interest are fully paid." (**Exhibit B**).

73.     At the time the judgment was obtained against Plaintiff, the judgment stated [t]he principal balance of this judgment shall bear interest at the rate of 12.00% per annum." (**Exhibit B**).

74.     At no time prior to the judgment having been entered against Plaintiff did Defendant inform Plaintiff that it would be requesting that a judgment be entered against Plaintiff in the Sedgwick County Lawsuit.

75.     At no time prior to the judgment having been entered against Plaintiff did Plaintiff inform Defendant that he would consent to a judgment being entered against him in the Sedgwick County Lawsuit.

76.     Subsequent to November 15, 2011, Defendant continued to withdraw funds from Plaintiff's Meritrust checking account.

77.     On or about November 18, 2011, Defendant withdrew $100.00 from Plaintiff's Meritrust checking account.

78.     The November 18, 2011, payment was withdrawn pursuant to the terms of the payment agreement entered into between the parties.

79.     On or about November 18, 2011, Defendant transferred to Defendant $100.00 in funds from Plaintiff's Meritrust checking account.

80.     On or about November 18, 2011, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Meritrust checking account.

81.     On or about November 18, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

82.     On or about November 18, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Meritrust Credit Union had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

83.     At no time prior to November 18, 2011, did Defendant provide Plaintiff with a copy of any written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

84.     On or about November 18, 2011, subsequent to Defendant having withdrawn $100.00 from Plaintiff's Meritrust checking account, upon information and belief, Plaintiff only owed a principal balance of $2,411.88 relative to the Debt.

85.     On or about December 2, 2011, Defendant withdrew $100.00 from Plaintiff's Meritrust checking account.

86.     The December 2, 2011, payment was withdrawn pursuant to the terms of the payment agreement entered into between the parties.

87.     On or about December 2, 2011, Defendant transferred to Defendant $100.00 in funds from Plaintiff's Meritrust checking account.

88.     On or about December 2, 2011, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Meritrust checking account.

89.     On or about December 2, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

90.     On or about December 2, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Meritrust Credit Union had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

91.     At no time prior to December 2, 2011, did Defendant provide Plaintiff with a copy of any written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

92.     On or about December 2, 2011, subsequent to Defendant having withdrawn $100.00 from Plaintiff's Meritrust checking account, upon information and belief, Plaintiff only owed a principal balance of $2,311.88 relative to the Debt.

93.     On or about December 16, 2011, Defendant withdrew $100.00 from Plaintiff's Meritrust checking account.

94.     The December 16, 2011, payment was withdrawn pursuant to the terms of the agreement entered into between the parties.

95.     On or about December 16, 2011, Defendant transferred to Defendant $100.00 in funds from Plaintiff's Meritrust checking account.

96.     On or about December 16, 2011, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Meritrust checking account.

97.     On or about December 16, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

98.     On or about December 16, 2011, at the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Meritrust checking account, Meritrust Credit Union had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

99.     At no time prior to December 16, 2011, did Defendant provide Plaintiff with a copy of any written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Meritrust checking account to Defendant.

100.     On or about December 16, 2011, subsequent to Defendant having withdrawn $100.00 from Plaintiff's Meritrust checking account, upon information and belief, Plaintiff only owed a principal balance of $2,211.88 relative to the Debt.

101.     At no time from October 2011, subsequent to the parties having entered into the payment agreement, through January 2012, did Plaintiff inform Defendant that he no longer wanted to pay the Debt.

102.     At no time from October 2011, subsequent to the parties having entered into the payment agreement, through January 2012, did Plaintiff inform Defendant that he no longer wanted Defendant to continue withdrawing payments from Plaintiff's Meritrust checking account.

103.     At no time from October 2011, subsequent to the parties having entered into the payment agreement, through January 2012, did Plaintiff withdraw his consent to allow Defendant to withdrawal payments from Plaintiff's Meritrust checking account.

104.     In January 2012, Defendant did not withdraw any payments from Plaintiff's Meritrust checking account.

105.    Defendant's failure to withdraw payments from Plaintiff's Meritrust checking account relative to the payment agreement entered into between the parties was not the result of action or inaction on behalf of Plaintiff.

106.    Despite the parties having entered into the payment agreement, in January 2012, Defendant failed to comply with the terms of the payment agreement.

107.    Defendant's conduct in informing Plaintiff that the parties had entered into a payment agreement, in October 2011, only for Defendant to refuse to continue honoring the payment agreement was unfair and/or unconscionable.

108.    Defendant's representations to Plaintiff, in October 2011, that the parties had entered into a settlement agreement such that Plaintiff would continue to make regular payments against the Debt until the Debt was paid in full, were false, deceptive and/or misleading given that in January 2012, Defendant no longer withdrew payments from Plaintiff's account relative to the payment agreement.

109.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about January 25, 2012, Defendant commenced garnishment proceedings against Plaintiff in the Sedgwick County Lawsuit in an attempt to collect the Debt.

110.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about February 21, 2012, Defendant commenced additional garnishment proceedings against Plaintiff in the Sedgwick County Lawsuit in an attempt to collect the Debt.

111.    On or about February 22, 2012, Defendant requested that a garnishment order be entered against Plaintiff in the Sedgwick County Lawsuit relative to the Debt.

112.    Defendant's conduct in commencing garnishment proceedings against Plaintiff, despite Plaintiff having entered into a payment agreement with Defendant and despite Plaintiff having complied with the terms of said agreement was unfair and/or unconscionable.

113.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about February 29, 2012, Defendant withdrew more than $100.00 from Plaintiff's account.

114.    On or about February 29, 2012, Defendant withdrew $1,880.83 from Plaintiff's Meritrust checking account.

115.    The aforesaid withdrawal was successful.

116.    Plaintiff did not provide Defendant with consent to withdraw the aforesaid funds.

117.    On or about February 29, 2012, at the time Defendant withdrew $1,880.83 from Plaintiff's account, the funds in Plaintiff's account decreased such that other charges, checks and/or purchases made by Plaintiff, from on or about March 2, 2012 through on or about March 7, 2012, were rejected as a result of Plaintiff having insufficient funds in Plaintiff's Meritrust checking account.

118.    On or about February 29, 2012, subsequent to Defendant having withdrawn $1,880.83 from Plaintiff's Meritrust checking account, Plaintiff only owed the Debt in the amount of $331.05.

119.    Despite the parties having entered into the payment agreement, on or about February 29, 2012, Defendant failed to comply with the terms of the payment agreement.

120.    Defendant's conduct in informing Plaintiff that the parties had entered into a payment agreement, in October 2011, only for Defendant to refuse to continue honoring the payment agreement was unfair and/or unconscionable.

15

121.    Defendant's representations to Plaintiff, in October 2011, that the parties had entered into a settlement agreement were false, deceptive and/or misleading given that in February 2012, Defendant withdrew funds from Plaintiff in an amount in excess of the payment terms agreed upon between the parties.

122.    In or around March 2012, subsequent to Defendant having withdrawn $1,880.83 from Plaintiff's Meritrust checking account, Plaintiff initiated a telephone call to Defendant.

123.    In or around March 2012, during the aforesaid telephone call between Plaintiff and Defendant, Plaintiff asked Defendant why it withdrew $1,880.83 from his Meritrust checking account.

124.    Plaintiff further told Defendant that he believed the parties had entered into a payment agreement.

125.    Plaintiff further told Defendant the terms of the payment agreement into which the parties had entered.

126.    Defendant responded to Plaintiff's statements by informing Plaintiff that it withdrew the aforesaid funds in the amount of $1,880.83 because Plaintiff had "informed Defendant that he no longer wanted to continue making payments to Defendant in accordance with the payment agreement."

127.    Defendant further informed Plaintiff that he allegedly made the statements to Defendant, as delineated in the paragraph above, in November 2011.

128.    Plaintiff never informed Defendant that he no longer wanted to continue making payments to Defendant in accordance with the payment agreement.

129.    Plaintiff then informed Defendant that he never told Defendant he wanted to stop making payments in accordance with the payment agreement.

130.    Defendant reiterated to Plaintiff that Plaintiff had putatively informed Defendant of the aforesaid information.

131.    Plaintiff then asked Defendant to hear the recording of the telephone conversation wherein Plaintiff said the information to Defendant.

132.    To date, Defendant has not provided Plaintiff with a telephone conversation recording wherein Plaintiff told Defendant he no longer wanted to make payments to Defendant.

133.    During the course of the aforesaid telephone call, Plaintiff asked Defendant to provide him with proof that he allegedly informed Defendant he no longer wanted to make payments to Defendant.

134.    To date, Defendant has not provided Plaintiff with proof to demonstrate that Plaintiff told Defendant he no longer wanted to make payments to Defendant.

135.    Defendant's representations to Plaintiff during the aforesaid telephone conversation, i.e. that Plaintiff had told Defendant he no longer wanted to make payments to Defendant, were false, deceptive and/or misleading given that Plaintiff never made the aforesaid representations to Defendant.

136.    During the aforesaid telephone call, Defendant acknowledged having withdrawn $1,880.83 from Plaintiff's Meritrust checking account.

137.    On or around March 20, 2012, despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, Defendant requested that an additional garnishment order be entered against Plaintiff in the Sedgwick County Lawsuit relative to the Debt.

138.    On or about March 20, 2012, a garnishment order was issued in the Sedgwick County Lawsuit.

139.    Again, Defendant's conduct in commencing garnishment proceedings against Plaintiff, despite Plaintiff having entered into a payment agreement with Defendant and despite Plaintiff having complied with the terms of said agreement was unfair and/or unconscionable.

140.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about April 11, 2012, Defendant commenced additional garnishment proceedings against Plaintiff in the Sedgwick County Lawsuit in an attempt to collect the Debt.

141.    Again, Defendant's conduct in commencing garnishment proceedings against Plaintiff, despite Plaintiff having entered into a payment agreement with Defendant and despite Plaintiff having complied with the terms of said agreement was unfair and/or unconscionable.

142.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about May 8, 2012, Defendant, again, requested that an additional garnishment order be entered against Plaintiff in the Sedgwick County Lawsuit relative to the Debt.

143.    On or about May 8, 2012, a garnishment order was issued in the Sedgwick County Lawsuit.

144.    On or about May 11, 2012, Defendant returned $1,011.94 to Plaintiff's Meritrust checking account.

145.    Despite the parties having entered into the payment agreement, wherein payments were to be taken out in the amount of $100.00, on or about May 11, 2012, subsequent to Defendant having returned funds to Plaintiff's Meritrust checking account, as delineated above, Defendant then withdrew more than $100.00 from Plaintiff's account.

146.     On or about May 11, 2012, Defendant withdrew $599.19 from Plaintiff's Meritrust checking account.

147.     The aforesaid withdrawal was successful.

148.     Plaintiff did not provide Defendant with consent to withdraw the aforesaid funds.

149.     Defendant's conduct in informing Plaintiff that the parties had entered into a payment agreement, in October 2011, only for Defendant to refuse to continue honoring the payment agreement was unfair and/or unconscionable.

150.     Defendant's representations to Plaintiff, October 2011, that the parties had entered into a settlement agreement were false, deceptive and/or misleading given that on or about May 11, 2012, Defendant withdrew funds from Plaintiff in an amount in excess of the payment terms agreed upon between the parties.

151.     Despite the parties having entered into the payment agreement, on or about May 11, 2012, Defendant, again, failed to comply with the terms of the payment agreement.

## COUNT I: VIOLATION OF THE FDCPA

152.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

153.     In its attempts to collect the Debt, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a.  Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    b.  Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    c.  Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

     d.  Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

154.   As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, SETH JOHNSON, by and through his attorneys, respectfully prays for judgment as follows:

    a.     All actual compensatory damages suffered;

    b.     Statutory damages of $1,000.00;

    c.     Plaintiff's attorneys' fees and costs;

    d.     Any other relief deemed appropriate by this Honorable Court

## COUNT I: VIOLATION OF THE EFTA

155.   Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

156.   The Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.*, provides in part as follows:

"§1693e – Preauthorized Transfers

(a)    A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made …"

157.   On or about the following dates, Defendant carried out  preauthorized electronic fund transfers from Plaintiff's Meritrust checking account without having first obtained written consent from Plaintiff to carry out the transactions:

    a.     October 17, 2011;

    b.     November 7, 2011;

      c.      November 18, 2011;

      d.      December 2, 2011; and,

      e.      December 16, 2011.

158.    On or about the following dates, Defendant carried out preauthorized electronic fund transfers from Plaintiff's ANBS debit account without having first provided Plaintiff with any written authorization Defendant may have allegedly obtained from Plaintiff providing authorization to Defendant to carry out the transactions:.

      a.      October 17, 2011;

      b.      November 7, 2011;

      c.      November 18, 2011;

      d.      December 2, 2011; and,

      e.      December 16, 2011.

159.    Defendant debited Plaintiff's Meritrust checking account, on multiple occasions, without obtaining a written authorization signed or similarly authenticated from Plaintiff for a preauthorized electronic fund transfer from Plaintiff's Meritrust checking account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. §1693e(a).

160.    Defendant debited Plaintiff's Meritrust checking account, on multiple occasions, without providing Plaintiff a copy of a written authorization allegedly signed or similarly authenticated by Plaintiff for a preauthorized electronic fund transfer from Plaintiff's Meritrust checking account, thereby violating Section 907(a) of the EFTA.

WHEREFORE, Plaintiff, SETH JOHNSON, by and through his attorneys, respectfully prays for judgment as follows:

      a.      All actual compensatory damages suffered under 15 U.S.C. §1693(a)(1);

b.       Statutory damages allowable under 15 U.S.C. §1693m(a)(2)(A);

c.       Plaintiff's attorneys' fees and costs under 15 U.S.C. §1693a(3); and,

d.       Any other relief deemed appropriate by this Honorable Court.

### V.       JURY DEMAND

161.    Plaintiff hereby demands a trial by jury on all issues so triable.

162.    The Plaintiff, SETH JOHNSON, by and through his attorneys, SMITHMARCO,

P.C., hereby respectfully requests that the trial of this matter proceed in Kansas City.


Respectfully submitted,
**SETH JOHNSON**

By:    s/ D. Matthew Durgin
Attorney for Plaintiff

Dated: August 21, 2012

D. Matthew Durgin (Atty. No.: 21557)
SMITHMARCO, P.C.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:   (913) 908-2313
                   (913) 871-4170
Facsimile:   (888) 418-1277
E-Mail:      mdurgin@smithmarco.com